**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CECIL M. SMITH,

      Plaintiff-Appellant,

vs.

CITY OF ENID, by and through the Enid
City Commission

      Defendant-Appellee,

ENID FIRE DEPARTMENT CIVIL
SERVICE COMMISSION,

      Defendant,

OKLAHOMA FIREFIGHTERS
PENSION AND RETIREMENT
SYSTEM,

      Defendant-Intervenor-Appellee.

No. 97-6223

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-96-809-T)

---

Phyllis L. Walta (Frank E. Walta with her on the briefs), Walta & Walta, Enid,
Oklahoma, for Plaintiff-Appellant Cecil M. Smith.

David W. Lee, (Carol Lahman, Enid, Oklahoma, with him on the brief), Comingdeer and
Lee, Oklahoma City, Oklahoma, for Defendant-Appellee City of Enid.

Marc Edwards, Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, Oklahoma, for Defendant-Intervenor-Appellee Oklahoma Firefighters Pension and Retirement System.

---

Before **BALDOCK**, **McKAY**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiff-Appellant Cecil M. Smith (Smith) appeals from the district court's grant of summary judgment in favor of Defendant-Appellee City of Enid (the City) and Defendant-Intervenor-Appellee Oklahoma Firefighters Pension and Retirement System (the System) on his 42 U.S.C. § 1983 claims.[1]  Mr. Smith also appeals from the district court's refusal to exercise jurisdiction over his supplemental state law claims.  See 28 U.S.C. § 1367(c)(3).  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Mr. Smith was employed with the City as a firefighter.  By 1989, Mr. Smith had attained the rank of assistant fire chief and had accrued over twenty years of service with the City.  As required by Oklahoma statute, the City was a participating municipality in the System, and as an eligible full time firefighter, Mr. Smith was a participating member in the System.  Under the System's statutory scheme, member firefighters with twenty or more years of service are eligible to retire and receive a monthly service pension benefit.

---

[1]The Enid Fire Department Civil Service Commission is not a party to this appeal.

At any time, retired member firefighters receiving a pension benefit may serve as firefighters for compensation within the state of Oklahoma; they may not, however, continue to receive pension benefits during such service.

In October 1988, Bob Hollander, Executive Director of the System, and Pete Stavrose, the Legislative Director of the Oklahoma State Firefighters Association, held a meeting at the Enid fire station to discuss proposed legislation for a deferred compensation plan for Oklahoma firefighters. Mr. Smith attended this meeting, where it was related that under the proposed legislation firefighters opting to participate in the plan would be required to retire after a set number of years.

On April 24, 1989, a deferred compensation plan for Oklahoma firefighters was enacted into law. It provided, in pertinent part:

A. In lieu of terminating employment and accepting a service retirement pension . . . any member of [the System] who has not less than twenty (20) years of creditable service and who is eligible to receive a service retirement pension may elect to participate in the Oklahoma Firefighters Deferred Option Plan and defer the receipts of benefits in accordance with the provisions of this section. . . . .

C. The duration of participation in the Oklahoma Firefighters Deferred Option Plan for active firefighters shall not exceed five (5) years.

D. When a member begins participation in the Oklahoma Firefighters Deferred Option Plan, the contribution of the employee shall cease. The employer contributions shall continue to be paid . . . . Municipal contributions for employees who elect the Oklahoma Firefighters Deferred Option Plan shall be credited equally to [the System] and to the Oklahoma Firefighters Deferred Option Plan. The monthly retirement benefits that would have been payable had the member elected to cease employment and receive a service retirement shall be paid into the Oklahoma Firefighters Deferred Option Plan account.

3

1989 Okla. Sess. Laws 240-41 (codified at Okla. Stat. Ann. tit. 11, § 49-106.1 (West Supp.1998)).  Mr. Smith received a copy of the newly enacted legislation in bill form, read it, and determined that it did not require him to retire after five years if he participated in the plan.  Mr. Smith accordingly decided to opt into the plan, and on October 17, 1989, he drove to the System's offices in Oklahoma City and informed Bob Hollander he wished to sign up for the Deferred Option Plan.  Mr. Hollander provided Mr. Smith with the form, and Mr. Smith signed it.  The election form provided that participation in the plan was limited to five years and that Mr. Smith's deferred option deposits would cease September 1, 1994.  The election form did not explicitly provide that Mr. Smith would be required to retire in five years.  Later that year, Mr. Smith discussed the Deferred Option Plan with Everett Brewer, former City of Enid fire chief and a member of the System's Board of Directors, thanking him for his effort in getting the Deferred Option Plan enacted.  Mr. Brewer told Mr. Smith that "it's a really good law that they passed and fortunately you don't have to leave employment after you've completed it."  See II Aplt. App. at 142.

On May 31, 1990, Okla. Stat. Ann. tit. 11 § 49-106.1(C) was amended to add the following language:

> At the conclusion of a member's participation in the Oklahoma Firefighters Deferred Option Plan, the member shall terminate employment with all participating municipalities as a firefighter, and shall start receiving the member's accrued monthly retirement benefit from the System.

1990 Okla. Sess. Laws 1753, 1754 (codified at Okla. Stat. Ann. tit. 11, § 49-106.1(C)

4

(West Supp.1998)).  On June 15, 1990, the System sent a memo to all members informing them of the legislative changes.  The memo noted the addition of the five-year retirement requirement, and noted that "[t]he legislature made the change[] in keeping with their policy of having the same benefits for all [retirement] systems." II Aplt. App. at 167.

On May 11, 1994, in response to an inquiry made by the Enid City Attorney regarding the application of the 1990 amendment, the Lawton City Attorney indicated he felt "the firefighter that wants to stay on after [the expiration of the Deferred Option Plan] has the winning position if he chooses to contest the issue . . . ." II Aplt. App. at 168.  However, on May 24, 1994, Bob Hollander informed Mr. Smith by letter that "[a]ll [Deferred Option Plan] participants must terminate [employment] at the end of the five year period of participation in [the] Plan . . . ."  Aplt. App. at 75.  Though Mr. Smith refused to petition the System Board for retirement, on August 19, 1994 the System Board voted to approve Mr. Smith's service retirement effective September 1, 1994, the date Mr. Smith was scheduled to end his participation in the Deferred Option Plan.  The City's fire chief requested Mr. Smith's termination on August 22, 1994, effective August 31, 1994.  Mr. Smith was terminated on that date without a hearing.

Mr. Smith filed this suit on May 23, 1996, alleging that the City and the System deprived him of due process by terminating him without a hearing and impaired his right to receive the benefits of his contract in violation of the United States Constitution.  Mr. Smith also asserted breach of employment and impairment of contract claims under

Oklahoma law. The City and System moved for summary judgment, and the district court granted their motions, holding that the statute of limitations on Mr. Smith's § 1983 claims had expired. Having dismissed the federal claims, the district court declined to exercise jurisdiction over Mr. Smith's pendent state law claims.

Discussion

We review the district court's grant of summary judgment de novo, using the same standard as the district court. See Lytle v. City of Haysville, 138 F.2d 857, 862 (10th Cir. 1998). Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Lytle, 138 F.2d at 862. Where, as here, the facts and dates are not disputed, we may as a matter of law determine when a cause of action accrued. See Edwards v. International Union, United Plant Guard Workers, 46 F.3d 1047, 1050 (10th Cir.), cert. denied, 516 U.S. 811 (1995).

Though the two year limitations period governing both of Mr. Smith's § 1983 claims is a creature of state law, see Abbitt v. Franklin, 731 F.2d 661, 663 (10th Cir. 1984) (en banc), federal law governs the question of accrual of federal causes of action, and thus, dictates when the statute of limitations begins to run for purposes of § 1983. See Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995); Baker v. Board of Regents, 991 F.2d 628, 632 (10th Cir. 1993). "A civil rights action accrues when the plaintiff knows or

has reason to know of the injury which is the basis of the action." Baker, 991 F.2d at 632; see Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir.) (quoting Johnson v. Johnson County Comm'n Bd., 925 F.2d 1299, 1301 (10th Cir.1991)), cert. denied, 513 U.S. 832 (1994). Since the injury in a § 1983 case is the violation of a constitutional right, see Garcia v. Wilson, 731 F.2d 640, 650 (10th Cir. 1984), aff'd, 471 U.S. 261 (1985), such claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994). This requires the court "to identify the constitutional violation and locate it in time." Id.

Mr. Smith alleges two distinct federal constitutional violations. First, Mr. Smith's impairment of contract claim is predicated on the Contract Clause. See U.S. Const. art. I, § 10. In his complaint, he alleges that he "signed a 'Deferred Retirement Option Plan' [sic] with the . . . System" and that neither the contract he signed nor the law in existence at the time he signed it required participants in the Plan to retire. Aplee. City of Enid Supp. App. at 2. Accordingly, Mr. Smith asserts that he "possessed a vested or accrued right in his [Deferred Option Plan] contract" to continued employment, and that the subsequent 1990 amendment to the Deferred Option Plan requiring retirement cannot defeat that contractual right. Id. at 4.

Though Mr. Smith argues his impairment claim accrued in August 1994, when the City and System terminated his employment, the undisputed facts establish that the alleged constitutional claim—the impairment of Mr. Smith's Deferred Option Plan

7

contract—should have been apparent to Mr. Smith in 1990, when he received notice of the amendment to § 49-106.1(C). Although Mr. Smith suggests his impairment claim is analogous to actions for wrongful termination, see Aplt. Brief at 17-20, it is not. Though it is generally true that a claim for wrongful termination accrues when an employee is notified of an adverse employment decision, Mr. Smith has brought an impairment of contract claim, the very essence of which is a substantial impairment of plaintiff's contractual relationship with the state by a change in law. See General Motors Corp. v. Romein, 503 U.S. 181, 186-87 (1992). Thus, the constitutional injury, the injury which triggers the statute of limitations for purposes of § 1983, occurred when the 1990 amendment became law, not when the consequence of that constitutional injury—here, Mr. Smith's termination by the City and System—manifested itself.

Mr. Smith may not rely on Mr. Brewer's assessment of the law to defeat summary judgment. Mr. Brewer's statements are hearsay and may not be relied on in reviewing the district court's grant of summary judgment. See Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995). Even if their content were admissible, Mr. Smith has not sufficiently established that his reliance on those statements would be justified, as Mr. Brewer was not a member of the System Board at the time the statements were made and did not speak on behalf of the Board in a representative capacity. See Lehman v. City of Louisville, 967 F.2d 1474, 1477 (10th Cir. 1992). Moreover, though Mr. Smith suggests that prior to 1994 his claim would have been premature, the authority he cites for support

8

is distinguishable. In San Miguel Consol. Fire Protection District v. Davis, 30 Cal. Rptr. 2d 343, 352 (Cal. Ct. App. 1994), a statute passed by the legislature reallocated property tax revenues from fire districts to county educational augmentation funds to benefit school districts. There was no determination as to how much revenue would be lost. The court held an impairment of contract claim premature since the contract at issue would be impaired or terminated only if property taxes were substantially reduced by the operation of the statute. In contrast, if the 1990 amendment applied to him, Mr. Smith's employment with the City would unquestionably end in 1994. Mr. Smith admits he had actual notice of the generally applicable amendment to § 49-106.1(C) in 1990. Consequently, we hold his impairment of contract claim accrued at that time and triggered the two year statute of limitations.

Mr. Smith also asserts a procedural due process claim against the City, arguing that he "possesses a property interest in his employment with the . . . CITY . . . pursuant to city ordinances, policies, procedures, customs and practice." Aplee. City of Enid Supp. App. at 3. Mr. Smith alleges the City denied him the right "to be terminated only for cause, to receive notice of the charges against him, and to receive a hearing before an impartial hearing panel," causing him irreparable harm. Id. at 4; see Aplt. App. at 127-130. Mr. Smith's due process claim, however, is unquestionably linked to the City's application of the 1990 amendment to him. See Aplee. City of Enid Supp. App. at 2-3 (Complaint). Mr. Smith admits he had knowledge of the 1990 amendment, which clearly

9

requires participants in the Deferred Option Plan to terminate employment after five years of plan participation, but asserts he did not believe the amendment applied to him[2] and, in any event, did not know that if the amendment applied to him he would be terminated without a hearing.

We are urged, therefore, to adopt an accrual rule which would trigger the statute of limitations in procedural due process claims when the employer notifies the employee of the adverse employment decision. Several circuits have so held, with varying understandings of when employer notice is adequate. See, e.g., Lawshe, 16 F.3d at 1480 (claim for deprivation of public employment without due process accrues on date of actual termination of employment); Hoesterey v. City of Cathedral City, 945 F.2d 317, 320 (9th Cir. 1991) (clear notice of a final decision to terminate without further process may occur prior to actual termination); Rubin v. O'Koren, 621 F.2d 114, 116 (5th Cir. 1980) (cause of action accrued when employment period terminated), reh'g granted on other grounds, 644 F.2d 1023 (5th Cir. 1981), cert. denied, 504 U.S. 910 (1992). We are not, however, presented with a standard procedural due process claim, wherein the

---

[2]This belief is apparently grounded in Mr. Smith's argument that he had a vested right to continued employment with the City under the Deferred Option Plan as it was enacted in 1989. Because we do not address the merits of Mr. Smith's claims, we need not address his contention that he had a vested right in continued employment, notwithstanding Taylor v. State & Educ. Employees Group Ins. Program, 897 P.2d 275, 279 (Okla. 1995); Woods v. City of Lawton, 845 P.2d 880, 883 (Okla. 1992); and Baker v. Oklahoma Firefighters Pension and Retirement Sys., 718 P.2d 348, 352-53 (Okla. 1986).

plaintiff complains of termination without cause and a hearing based on her exercise of a constitutional right. Instead, Mr. Smith's due process argument inherently challenges the City's compliance with the 1990 amendment. In the unusual situation with which we are faced, state law provides that termination of employment with the City will—in fact, must—occur. See, e.g., Dillon v. City of Tulsa, 273 P.2d 145, 150 (Okla. Crim. App. 1954) (holding that an ordinance must give way to the general laws of the state if they conflict). Here, the notice of termination is the statute itself, the statute is by its terms mandatory, and no amount of pre-termination process short of a lawsuit for declaratory judgment could provide relief.

Mr. Smith had actual notice of the 1990 amendment, and his complaint belies any assertion that he was unaware the City might rely on the 1990 amendment in terminating his employment in 1994. See Aple. Supp. App. at 3, ¶ 12 ("Throughout the five year term of the [Deferred Option Plan] Contract, SMITH continually informed personnel and supervisors at the Enid Fire Department . . . of his intention to continue his employment after the end of the term of the Deferred Option Contract."). Moreover, Mr. Smith has not alleged any reliance on statements made by City officials regarding his continued employment in light of the 1990 amendment, nor has Mr. Smith alleged he had knowledge of or relied on the Lawton City Attorney's April 13, 1994 opinion. Finally, Mr. Smith's subjective belief that the amendment did not apply to him is irrelevant, since our inquiry is whether Mr. Smith knew or should have known in 1990 that the City would

11

comply with the 1990 amendment and retire him at the end of the five-year period, as he had been advised.

Under these circumstances, Mr. Smith knew or should have known that the 1990 amendment generally provided for termination of all Deferred Option Plan members after five years solely because their five years of participation in the Plan had ended, that the City would be required to comply with it, and that the City would accordingly terminate him in 1994 without cause and a hearing. We thus affirm the district court's dismissal of Mr. Smith's federal claims as barred by the statute of limitations and do not reach the parties' arguments relating to the merits of those claims.

Finally, Mr. Smith argues that the district court abused its discretion by refusing to exercise jurisdiction over his supplemental state law claims. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims. See 28 U.S.C. § 1367(c)(3); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995). After a thorough review of the record and the authority cited by Mr. Smith, we cannot say the district court abused its discretion in dismissing his remaining state claims.

AFFIRMED.