**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 26, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER CHASE SPENCER,

Plaintiff-Appellant,

v.

JEFF LANDRITH, in his official
capacity as Mayor of City of Mustang,
a Political Subdivision of Oklahoma;
MONTE L. JAMES, in his official
capacity as Chief of Police of the City
of Mustang Police Department;
CAMIE McNEIL, in her official
capacity; KIRK DICKERSON, in his
individual and official capacities;
CLIFF DACUS, in his individual and
official capacities; TERRY DWYANE
TAYLOR,

Defendants-Appellees.

No. 07-6234
(D.C. No. 5:06-cv-00500-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **BRORBY**, and **EBEL**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Christopher Chase Spencer appeals from the district court's order granting summary judgment in favor of the City of Mustang, Oklahoma; various City officials and officers (the City defendants); and a local private resident on his federal claim under 42 U.S.C. § 1983 and dismissing without prejudice his state-law claims. We affirm.

## BACKGROUND

**Factual Basis**

On May 17, 2004, seventeen-year-old Chase Spencer and a friend spent time together in Edmond, Oklahoma. Their activities included drinking beer. Mr. Spencer then drove to Mustang, where the friend lived. While Mr. Spencer was driving his truck around Mustang, the friend threw two beer bottles onto the lawn of defendant Terry Dwyane Taylor. In his car, Mr. Taylor chased Mr. Spencer's truck, catching up with him outside the friend's home. Mr. Spencer dropped off the friend and, alone in the truck, he attempted to elude Mr. Taylor.

Notwithstanding Mr. Spencer's driving efforts, Mr. Taylor passed the truck and forced it off the road. He broke the truck window, grabbed Mr. Spencer, put him into the car, and sped back to his house. There, Mr. Taylor placed Mr. Spencer under a self-described "citizen's arrest." In the process, he handcuffed him, knocked him to the ground, punched him in the head, dragged him across a driveway, and planted a foot on his neck.

-2-

On Mr. Taylor's instructions, the Mustang police were called. Defendants Dacus and Dickerson, who were familiar with Mr. Taylor from previous domestic-disturbance incidents, arrived at Mr. Taylor's front lawn. After removing Mr. Taylor's handcuffs from Mr. Spencer's wrists, an officer walked Mr. Spencer toward his patrol car. Noticing the smell of alcohol and observing that Mr. Spencer was unsteady on his feet, with glassy eyes, Officer Dacus administered a roadside sobriety test. He determined that Mr. Spencer's responses indicated intoxication. Officer Dacus handcuffed Mr. Spencer and placed him in a patrol vehicle. Attempting to sort out the situation, the officers interviewed Mr. Taylor, who contended that he had placed Mr. Spencer under citizen's arrest for Driving Under the Influence (DUI). Mr. Spencer, however, declined to provide any information other than his name. Officer Dacus took Mr. Spencer into custody, based on a citizen's arrest.

At the police station, Officer Dacus administered a breathalizer test. The results indicated that Mr. Spencer's blood alcohol level was .01, which meant he was not legally intoxicated under Oklahoma's general DUI rules.[1] Within two

---

[1]    In its memorandum and order, the district court noted that, "[a]s a minor . . . it would have been unlawful for Plaintiff to have been driving with 'any measurable quantity of alcohol on his breath.'" Aplt. App., Vol. 4, Tab 2 at 895 (quoting 47 Okla. Stat. § 11-906.4(A)(1)). Although he does not list it as an issue presented for review, Mr. Spencer argues on appeal that the district court should have certified the question of whether .01 is a measurable quantity of alcohol under state law. Aplt. Br. at 15-17. Because Mr. Spencer did not ask the
(continued...)

hours after his seizure by Mr. Taylor, Mr. Spencer was released to his father. The next morning he sought medical care for contusions, abrasions, and cervical strain received during the citizen's arrest. His physician prescribed rest, an anti-inflammatory, and a painkiller.[2]

The City of Mustang did not charge Mr. Spencer with any criminal conduct arising from the incident, although it cited his friend for throwing the bottles. In a subsequent inquiry, Defendant McNeil, a police investigator, determined that Mr. Taylor's manhandling of Mr. Spencer did not occur in the context of a proper citizen's arrest. Mr. Taylor was ultimately convicted of misdemeanor destruction of property and assault and battery.

Later, Mr. Spencer filed suit seeking redress under several Oklahoma tort provisions and 42 U.S.C. § 1983. His complaint named as defendants the mayor of Mustang, the chief of police, the two police officers present at the Taylor home, the police investigator, and Mr. Taylor. The complaint asserted claims for negligent hiring, retention, and supervision; false arrest; abuse of process; libel

---

[1](...continued)
district court to certify the issue, we will not consider this contention. *See Stewart v. Kempthorne,* __ F.3d. __, 2009 WL 225874, *5 (10th Cir. Feb. 2, 2009) (declining to consider arguments raised for the first time on appeal).

[2]     In district court, Mr. Spencer claimed that the City defendants deprived him of medical care while in custody. Because he does not pursue this issue on appeal, the facts related to his physical condition illustrate the nature of his confrontation with Mr. Taylor, but are not directly relevant to this court's resolution of his case.

-4-

and slander; assault and battery; intentional or negligent infliction of emotional distress; false imprisonment; and constitutional torts. The City defendants sought summary judgment. For his part, Mr. Spencer filed a partial summary-judgment motion. Defendant Taylor did not respond to the other parties' filings.

**Basis of District Court's Ruling**

In a thoughtful Memorandum Opinion and Order, the district court acknowledged that the parties had presented "voluminous, mostly disputed facts regarding many tangential aspects of [the] case," but also recognized that factual disputes preclude the granting of summary judgment only if they pertain to material facts. Aplt. App., Vol. 4, Tab 2 at 891. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007) (stating that only a "'*genuine* issue of *material* fact'" can "'defeat an otherwise properly supported motion for summary judgment'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The court therefore distilled the record to uncontested facts, then analyzed the issues in light of the applicable law.

For several reasons, the court determined that all defendants were entitled to summary judgment on Mr. Spencer's federal false-arrest claim. First, the mayor, police chief, and investigator were not liable under any theory. Because they did not personally participate in the event, they could not be held accountable in their individual capacities. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on

-5-

personal involvement in the alleged constitutional violation."). To the extent

Mr. Spencer was attempting to hold the mayor and police chief liable as

supervisors, this claim also fails. The theory of negligent supervision cannot

provide a basis for liability under § 1983. *See Darr v. Town of Telluride*,

495 F.3d 1243, 1256 (10th Cir. 2007). Moreover, "there is no concept of strict

supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994

(10th Cir. 1996) (quotation and citation omitted). "[I]t is not enough for a

plaintiff merely to show a defendant was in charge of other state actors who

actually committed the violation." *Id*. Rather, "the plaintiff must establish a

deliberate, intentional act by the supervisor to violate constitutional rights."

*Id*. at 994-95 (quotations and citations omitted). Mr. Spencer's filings do not

provide a basis for the imposition of supervisor liability.

And in the supervisors' official capacities, Mr. Spencer was required to

demonstrate that his injuries were the result of a municipal "policy or custom."

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007) ( "A

municipality cannot be held liable for its officers' actions under § 1983 unless

those actions were caused by a policy or custom of the municipality."); *Myers v.*

*Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)

(recognizing that suits against municipal officers acting in an official capacity are

treated the same as those against a municipality). A "'custom' . . . mean[s] an act

that, although not formally approved by an appropriate decision maker, has such

-6-

widespread practice as to have the force of law." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003). Mr. Spencer's assertions that the Mustang Police Department had been complacent in responding to earlier problems with Mr. Taylor did not add up to a municipal custom. And his further allegations that Mr. Taylor's sister is a former dispatcher for Mustang and her husband is an Oklahoma City police officer added no weight to his case. Mr. Spencer's evidence did "not show that the City of Mustang had an unlawful custom regarding Taylor or that such a custom resulted in Plaintiff's alleged constitutional violations." Aplt. App., Vol. 4, Tab 2 at 892.

Second, the officers on the scene had independent reasons for their determination that probable cause existed to continue the arrest begun by Mr. Taylor. In particular, Officer Dacus observed Mr. Spencer with classic signs of intoxication, indicating that he had committed the crime of DUI. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998) (stating that "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity" in a § 1983 warrantless-arrest case "if a reasonable officer could have believed that probable cause existed to arrest the plaintiff") (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (further quotation omitted). "[A] reasonable officer would have believed that probable cause existed for [Mr. Spencer's] arrest." Aplt. App., Vol. 4, Tab 2 at 896.

Third, the undisputed facts did not demonstrate that City defendants were responsible for Mr. Taylor's conduct under the theory of "danger creation." *Id.* at 899-900. "In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008). The "danger creation" exception to this rule, proposed by Mr. Spencer, applies to instances "when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Id.* (quotation omitted). To qualify for this exception,

> [a] plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Id.* Plaintiff's case satisfied none of these requirements, as "the evidence . . . clearly demonstrate[d] that Taylor's pursuit, arrest, and detention of Plaintiff were factually and legally independent of any state action. . . ." R., Vol. 4, Tab 2 at 899-900.

Fourth, Mr. Taylor was not "a proper defendant for [a] federal constitutional claim." *Id.* at 899. "[T]he only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. Neil Young Freedom*

*Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (footnotes and brackets omitted). Thus, Mr. Spencer was required to come forward with facts demonstrating that Mr. Taylor can "fairly be said to be a state actor." *Anderson v. Suiters*, 499 F.3d 1228, 1233 (10th Cir. 2007) (quotations omitted). To satisfy this standard, Mr. Spencer relied on three of the four tests outlined by the Supreme Court: the nexus test, the symbiotic relationship test, and the joint action test. Aplt. App., Vol. 4, Tab 2 at 899. *See also Anderson*, 499 F.3d at 1233. Mr. Spencer's evidence did not demonstrate a nexus between the City's purposes and Mr. Taylor's conduct, a long-term symbiotic interdependence between the City and Mr. Taylor, or concerted action undertaken by the City and Mr. Taylor to deprive Mr. Spencer of his rights. *See Gallagher*, 49 F.3d at 1448-56 (describing and applying each of the tests).

The district court concluded that Mr. Spencer "may have remaining grounds for relief against Taylor," but he had not asserted the material facts essential to a § 1983 claim. Aplt. App., Vol. 4, Tab 2 at 899. Accordingly, it granted the City defendants' motion for summary judgment as to the federal-law claims and *sua sponte* granted summary judgment to Mr. Taylor. It also dismissed his state-law claims without prejudice. *Id.* at 901. Mr. Spencer has appealed, asserting seven issues for this court's review.

**DISCUSSION**

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1322 (10th Cir. 2008) (quotation omitted). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Five of Mr. Spencer's overlapping appellate issues were addressed in the district court's order. He argues that (1) there were genuine issues of material fact that precluded summary judgment; (2) the district court improperly engaged in credibility determinations; (3) there was "a genuine issue of material fact to support the claim that Taylor was acting under color of law when he executed a citizen's arrest;" (4) there was a genuine issue of material fact concerning his claim that the Mustang Police Department's "custom or policy of complacency regarding the actions of Taylor . . . resulted in a violation of [Mr. Spencer's] constitutional rights;" and (5) there was a genuine issue of fact to support his claim that the City defendants "were acting jointly with Taylor." Aplt. Br. at 1-2.

Upon our review of the record and the parties' arguments, we conclude that the district court properly analyzed and resolved Mr. Spencer's federal claims against the City defendants. Accordingly, we affirm the entry of summary

-10-

judgment in favor of the City defendants for substantially the same reasons set forth in the district court's memorandum and order of August 8, 2007.

Mr. Spencer also argues that the district court erred in granting summary judgment in favor of Mr. Taylor on the § 1983 claim. *Id.* at 2. "[A] *sua sponte* grant of summary judgment although not encouraged, is permissible, provided that the losing party was put on notice to come forward with all its evidence." *Holmes v. Utah, Dep't of Workforce Servs.*, 483 F.3d 1057, 1067 (10th Cir. 2007). Mr. Spencer's arguments concerning the § 1983 liability of the City defendants and Mr. Taylor were intertwined. He was therefore on notice of the need to come forward with all evidence indicating Mr. Taylor's accountability for a federal constitutional violation. We reject Mr. Spencer's contentions on this issue and affirm the district court's grant of summary judgment to Mr. Taylor.

Finally, Mr. Spencer asserts that there were genuine issues of material fact supporting his claims under the Oklahoma Government Tort Claims Act. Aplt. Br. at 2. The implication is that the district court wrongly entered summary judgment on certain of his state claims. The district court's order, however, stated that it "decline[d] to exercise supplemental jurisdiction over Plaintiff's state law claims," and therefore dismissed them without prejudice. Aplt. App., Vol. 4, Tab 2 at 900. In accordance with 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over a state-law claim if "the district court has dismissed all claims over which it has original

-11-

jurisdiction." *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). This issue is without merit.

The judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge